POWERS, et al,
*Appellants - Cross-Respondents,*
*v.*
KIRKMAN LABORATORIES, INC.,
*Respondent - Cross-Appellant.*

(No. 177162, CA 14782)

610 P2d 280

James C. Powers, Los Angeles, California, argued
the cause for appellants - cross-respondents. With him
on the briefs were Nossaman, Krueger & Marsh, Los

Angeles, California, and John B. DesCamp, and Weiss, Derr & Wetzel, Portland.

David P. Weiner, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Samuels, Samuels, Yoelin & Weiner, Portland.

Before Joseph, Presiding Judge, and Richardson and Gillette,* Judges.

GILLETTE, J.

---

*Gillette, J., *vice* Lee, deceased.

## GILLETTE, J.

This is a forcible entry and detainer action brought by plaintiffs, the lessors, to recover possession of real property from defendant, a commerical tenant, whose lease of the premises was terminated for failure to pay rent when due. The trial court found that the defendant paid the rent in question in advance and was entitled to maintain possession of the premises. Plaintiff appeals from the judgment entered for defendant. Defendant cross-appeals from the failure to award attorney fees. We reverse.

The facts are not in dispute. In April, 1964, defendant's and plaintiffs' predecessors in interest entered into a ten year lease agreement. The lease provided that rent was payable in advance on the first day of each month. Rent was set at $550 per month for the first five years and $600 per month thereafter. In the event the lessee did not pay the monthly rent within 10 days after it became due, the lessor could immediately terminate the lease without demand or notice. At the time the lease was entered into, the lessee agreed to pay $1800 in advance to be applied as the rental payment for August, September and October, 1975, the last three months of the ten year rental period.

In February, 1975, the parties entered into a ten year extension of the lease agreement. Rent was to be paid "in the same manner as specifically set forth" in the previous agreement. The basic monthly rent remained at $600 per month and an escalation clause, providing for a yearly adjustment in rent with a ceiling of $900, was added. The 1975 agreement made no mention of the $1800, nor was there any similar provision for the advance payment of rent. However, the agreement did provide that:

> "Except as herein specifically provided, the provisions of said lease agreement of April 24, 1964, shall continue in full force and effect for the entire extended term hereof."

[1085]

Following the execution of the extension agreement, the defendant continued to make the monthly rental payments, including those for the last three months of the original 10 year rental period. In January, 1978, defendant failed to pay the rent when due. Thereafter, on January 11, plaintiffs informed defendant by letter that, because the January, 1978, rent had not been paid within the 10 days after it became due, plaintiffs elected to terminate the lease, effective immediately. On January 13, 1978, defendant mailed a late payment of rent which plaintiffs refused to accept. Plaintiffs rejected all of defendant's subsequent tenders of rental payment and, on May 1, 1978, instituted this present action.

Defendant contends that, once it paid the rent for the last three months of the original rental period, the $1800 became prepaid rent to be applied whenever it was late in making its monthly rental payments. Thus, it argues, it was not in default on its January, 1978, rental payment. Plaintiffs argue that, as the extension agreement specifically extended the terms of the 1964 agreement, the $1800 was prepaid rent but only for the last three months of the new ten year rental period. The trial court found no evidence of any communication between the parties regarding the $1800 when the extension agreement was entered into. The court concluded that the $1800 was rent paid in advance by the defendant and that, because defendant had prepaid the rent, the statutory defense of ORS 105.120(3)[1] was available to it and plaintiffs could not now terminate the tenancy.

There is no dispute that the $1800 is rent paid in advance. The question is when it is to be applied. If the defendant had failed to pay the rent due for any

[1] ORS 105.120(3) provides that:

"(3) The service of a notice to quit upon a tenant or person in possession does not authorize an action to be maintained against him for the possession of premises before the expiration of any period for which the tenant or person has paid the rent of the premises in advance."

month, other than the last three months, during the first ten year rental persiod, it is clear that plaintiffs could have terminated the lease. As the court stated in *State Hwy. Comm. v. Demarest,* 263 Or 590, 597, 503 P2d 682 (1972), "prepaid rent becomes the absolute property of the landlord" * * * and "when the landlord requires the * * * last month's rental to be paid in advance, he also expects that the monthly rental in the interim will be paid according to the terms of the lease."

The extension agreement specifically incorporates the provisions of the original lease. A written lease, like other contracts, is to be construed according to the parties intentions as manifested by the words they use. *Helgesson v. Frank,* 17 Or App 133, 140, 521 P2d 16 (1974). The language in the agreement is clear. By not specifically mentioning the $1800 in the extension agreement, the provision for the advance payment of rent in the original lease continued to have the same effect. It is true that the original agreement made specific reference to the three months of August, September and October, 1975, as the rental period to which the $1800 was to be applied. However, the most reasonable construction of this clause, in connection with the extension agreement and in light of the fact that rent was paid for those three months, is that the $1800 is prepaid rent to be applied only for the last three months of the new rental period. This was the parties' original intention and, by not changing or deleting the provision for the advance payment in the extension agreement, that intention remained the same.

We conclude that defendant was in default on his rental payments and, as a result, plaintiffs are entitled to immediate possession of the leased premises. In light of our disposition of this issue, it is unnecessary for us to consider plaintiffs' other contentions or the matters raised by defendant's cross-appeal.

Reversed.